UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GERALD J. SILVA,
    Plaintiff,

v.                                                    C.A. No. 19-568JJM

STATE OF RHODE ISLAND,
    Defendant.

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Gerald J. Silva is a *pro se*[1] prisoner being held at Rhode Island's Adult Correctional Institutions ("ACI") awaiting trial on the charge of "Sexual Offender Registration Required" in violation of R.I. Gen. Laws § 11-37.1-3 ("Sex Offender Registration and Community Notification"). Rhode Island v. Silva, C.A. No. P2-2019-3668A ("R.I. v. Silva"). Plaintiff is also a federally convicted sex offender who completed a sentence of time-served for violating federally-imposed supervised release conditions including, *inter alia*, the requirement that he "shall comply with all applicable federal and state laws regarding the registration of sex offenders in the state of residence, employment and school attendance, and shall provide verification." United States v. Silva, Cr. No. 13-43JJM, ECF No. 131 ("U.S. v. Silva"). In this case, based on 42 U.S.C. § 1983, Plaintiff has sued the State of Rhode Island ("State") claiming that it is a violation of the Fifth Amendment's Double Jeopardy Clause[2] for Rhode Island to prosecute him for failing to register in light of the supervised release proceeding in this Court, which was based, in part, on the same conduct. He also contends that the State's prosecution

---

[1] Because he is *pro se*, Plaintiff's filings have been read with the leniency appropriate for all *pro se* litigants. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Silva v. Farrell, C.A. No. 18-650JJM, 2019 WL 2501887, at *1 (D.R.I. Jan. 15, 2019), adopted, 2019 WL 2500668 (D.R.I. Jan. 30, 2019).

[2] The Double Jeopardy Clause provides, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

may not proceed because he "decided not to commit to residing in R.I." Compl. (ECF No. 1) at 2 (emphasis in original). He asks this Court to enjoin the State's prosecution of him and to order that he be released back into federal custody and that all records related to the State's prosecution be destroyed.

Now pending before the Court is Rhode Island's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 8. Rhode Island argues that Plaintiff's pleading should be dismissed because the Double Jeopardy Clause is not implicated by a State criminal prosecution and a federal supervised release violation petition based on the same conduct; because Younger v. Harris, 401 U.S. 37 (1971), bars the injunctive relief Plaintiff seeks; and because, based on the request for release from State custody, his complaint is really a petition for habeas corpus, which is premature because he has not exhausted state court remedies. The motion to dismiss has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that it be granted. However, before dismissing the case in its entirety, I also urge the Court to consider what to do about an array of allegations Plaintiff marshalled in a document titled, "Addendums" (ECF No. 12), filed after the motion to dismiss was fully briefed. Although the Addendums is not an amended complaint conforming to the requirements of Fed. R. Civ. P. 8 and 10 and it includes allegations that would be subject to summary dismissal if asserted in an amended complaint, some of its allegations may amount to new claims pursuant to § 1983. Accordingly, consistent with the guidance below, I also recommend that Plaintiff be afforded thirty days to file a new complaint that asserts such of the matters in the Addendums as he may wish to bring as claims, subject to the right of the named defendants to ask the Court to dismiss the amended pleading.

I.      ANALYSIS OF PLAINTIFF'S PENDING COMPLAINT

### A. Background

On May 3, 2019, Plaintiff completed his six-year federal sentence for receipt and possession of child pornography and was released from federal custody. His federal sentence included an array of conditions applicable during the fifteen-year period of federal supervision to follow. U.S. v. Silva, ECF No. 86. As pertinent here, these include the stipulation that he must reside in the District of Rhode Island in a residence approved by U.S. Probation, that he may not leave the District of Rhode Island without permission of the Court or his supervising federal probation officer, and that he must "comply with all applicable federal and state laws regarding the registration of sex offenders in the state of residence, employment and school attendance, and shall provide verification of compliance with this requirement to the probation officer." Id. at 5.

Prior to and following release, Plaintiff consistently and stridently asserted his intent never to comply with any federal conditions of supervised release, including that he would not comply with state and federal registration requirements. His post-release conduct was consistent with his stated intent. As a result, following protracted federal proceedings, including a revocation hearing, Plaintiff was found to be in violation of several conditions of federal supervised release and sentenced to time served, with the additional condition that, after release, he must reside at a residential re-entry center, preferably at the Pawtucket, Rhode Island, Houston House. U.S. v. Silva, ECF No. 131. A new fifteen-year term of federal supervision was also imposed. Id. As described in detail in the underlying report and recommendation, among other findings, this Court's conclusion was based on the following:

> Registration is required by R.I. Gen. Laws § 11-37.1-3(a). . . . As to the Rhode Island registration requirement, the evidence (including Defendant's prior residence in Rhode Island and his presence in Rhode Island on May 7 and 8, 2019) permits the plausible inference that, upon release, Defendant intended to live somewhere in Rhode Island, yet had failed to register anywhere in Rhode Island, despite having been released for more than twenty-four hours. See R.I.

3

> Gen Laws § 11-37.1-4(e). While the evidence does not establish that Defendant had been residing in Rhode Island for more than twenty-four hours when he was arrested at a Rhode Island hotel, that is not what is required; rather, initial registration must be completed within twenty-four hours of the release from incarceration for an individual with the intent to reside in Rhode Island. Id. Recognizing that the government's burden is to prove the charged violation by a simple preponderance, I also find Defendant guilty of Violation No. 4 based on the failure to comply with Rhode Island law, as well as on his failure to verify compliance with Rhode Island law to Probation.

U.S. v. Silva, ECF No. 128 at 16, 18.

Immediately upon the completion of the federal sentence for violating conditions of supervision, Plaintiff was transferred into State custody and now faces pending State charges for an offense based on the same conduct. Compl. at 1. As the public docket in R.I. v. Silva confirms, Plaintiff has been held by the State since September 17, 2019, the day after he completed the federal sentence, and is currently being held on $10,000 surety bail, with a pretrial conference scheduled for April 9, 2020.[3]

Plaintiff's complaint alleges that "all the issues pertaining to [Plaintiff's][4] defiance of his Federal Conditions of Probation, including residency and registration, since May 3, 2019 were address, penalized, and resolved in RI Federal District Court"; therefore, the State "is seeking to try [Plaintiff] for the same issues creating Double Jeopardy by consequencing [Plaintiff] twice for the same issues, which is a clear violation of [Plaintiff's] Fifth Ammendment Rights, which is actionable under the 14th Amendment." Compl. at 1. It alleges that Plaintiff "was not in the community since the fore-mentioned issues were resolved in Federal Court on 9/16/19, and did not have time or opportunity to violate any conditions of Probation after the resolution." Id.

---

[3] In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider matters of public record, such as the public docket from the relevant State proceeding. See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000).

[4] Plaintiff sometimes refers to himself as "Defendant" in the complaint. In the interest of clarity, I refer to him as "Plaintiff," which is his status in this case.

And it alleges that there were errors in connection with a State-issued pre-arraignment notice in that it was sent to an incorrect address, resulting in the wrongful issuance of a warrant based on the failure to appear at a time when Plaintiff was in federal custody. Compl. at 2. The pleading concludes: "[t]he State of R.I. has <u>no</u> legal authority or standing to mandate which state [Plaintiff] is to reside. [Plaintiff] has Federal Charges. Therefore, this is a Federal issue." <u>Id.</u> Based on his decision "<u>not</u> to commit to residing in R.I., any issues involving registration in that state are moot." <u>Id.</u>[5]

The complaint seeks an emergency injunction "directing Providence Superior Court and all R.I. Authorities to immediately stop their involvement with this Federal Case, and to return [Plaintiff] to Federal custody to address and resolve any remaining issues regarding this situation." <u>Id.</u> at 2-3. It also requests this Court to order "the R.I. State Police, A.C.I. and R.I. Courts to destroy all documents generated by them pertaining to [Plaintiff] since 5/3/19" and to "verify compliance . . . in writing to the Federal Court Clerk." <u>Id.</u> at 3.

**B.     Standard of Review**

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." <u>Morales-Cruz v. Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012). The task of dividing "the plausible sheep from the meritless goats" is accomplished through careful,

---

[5] While not pertinent to what is in issue, I note that Plaintiff's federal conditions require him to reside in Rhode Island. <u>U.S. v. Silva</u>, ECF No. 131 at 5.

5

context-sensitive scrutiny of a complaint's allegations. Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014). The Court must then determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### C. Law and Analysis

#### 1. Double Jeopardy

Plaintiff's complaint fails because all of the claims[6] are based on the Fifth Amendment and the Double Jeopardy Clause is not implicated by a State prosecution for an offense based on the same conduct that was the foundation for a federal finding of a violation of supervised release conditions.

The Double Jeopardy Clause forbids a second prosecution and multiple punishments for the same offense. United States v. Halper, 490 U.S. 435, 440 (1989). However, it is well settled that consequences imposed for a violation of federal supervised release conditions is part of the penalty for the original conviction; it is not punishment for an offense. Johnson v. United States, 529 U.S. 694, 701 (2000); United States v. Smith, 500 F.3d 27, 31 (1st Cir. 2007) ("[T]here is no support for the proposition that a supervised release violation is a 'criminal offense.'"). Therefore, criminal prosecution for conduct that previously served as the basis for a revocation of supervised release does not violate the Double Jeopardy Clause. United States v. Arzate, No. 13-30008-RWZ, 2013 WL 6531121, at *2 (D. Mass. Dec. 13, 2013) (citing cases). As the United States Sentencing Guidelines ("USSG") makes clear, the sanction for a supervised release violation is based on the defendant's failure to follow the court-imposed conditions as a "breach

---

[6] Plaintiff's collateral allegations critiquing the State's proceedings – the notice sent to the wrong address and the finding that he failed to appear when he was in federal custody – arise from his core contention that the State proceeding is wrongful based on Double Jeopardy.

6

of trust," the need for deterrence and community safety, and not on the need for punishment for the offense.  USSG § 7A.3(b); see 18 U.S.C. § 3583(c).  Also fatal to Plaintiff's Double Jeopardy Clause claim is the recently-reaffirmed dual-sovereignty doctrine, which provides that, even if Plaintiff had been prosecuted for a federal "offense," instead of just a supervised release violation, prosecution by the State for the state version of the offense for the same conduct does not offend the Fifth Amendment.  Gamble v. United States, 139 S. Ct. 1960, 1963-64 (2019) ("the Double Jeopardy Clause of the Fifth Amendment . . . provides that no person may be 'twice put in jeopardy' 'for the same offence'"; however, "[u]nder this 'dual-sovereignty' doctrine, a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute").

Based on these principles, I find that Plaintiff's complaint fails to state a claim grounded in the Fifth Amendment and recommend that Defendant's motion to dismiss be granted.

### 2. *Younger* Abstention

With a complaint that fails to state a claim, the Court's analysis could stop here.  However, because of the importance of the principles barring federal court interference with an ongoing State criminal prosecution, I also recommend that the Court dismiss the complaint based on the Younger abstention doctrine.  Younger v. Harris, 401 U.S. 37, 46 (1971).  Grounded in the Anti-Injunction Act,[7] Younger bars a federal court from intervening by injunction or declaratory judgment in a pending state court criminal proceeding, except under extraordinary circumstances where the threat of irreparable injury is "both great and immediate," none of which apply to this case.  Id.; see Burnham v. Massachusetts, 279 F. Supp. 3d 368, 369 (D.

---

[7] Enacted in 1793, the Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

7

Mass. 2018) ("a federal court must abstain from hearing a case if doing so would 'needlessly inject' the federal court into ongoing state proceedings.") (quoting Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 664 (1st Cir. 2010)). Younger abstention would be appropriate even if Plaintiff was claiming a colorable violation of an important federal right (which he is not), as long as the federal claims can be raised and resolved somewhere in the state process. Burnham, 279 F. Supp. 3d at 369-70 (*pro se* prisoner's § 1983 case dismissed while state criminal proceeding ongoing based on Younger). Based on Younger and the ongoing State criminal proceeding, I recommend that the case should be dismissed.

### 3. Plaintiff's Claims Are Premature

Also fundamental to federalism are the reasons why Plaintiff's complaint must be dismissed as premature.

Plaintiff purportedly brings this action under 42 U.S.C. § 1983, which creates a remedy for violations of federal rights committed by persons acting under color of state law. However, as Plaintiff himself concedes, ECF No. 10 at 10, the principal remedy is immediate release from State custody; therefore, the case properly arises under the habeas corpus statute (28 U.S.C. § 2254) and must be dismissed because Plaintiff has failed to exhaust available state remedies. Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254, exhaustion of all state remedies before presenting claim to federal habeas court is "fundamental tenet[] of federal review of state convictions"). And, if somehow recast as a claim arising under § 1983, Plaintiff is barred by the well settled principle that § 1983 civil damage claims alleging that a criminal arrest or prosecution is illegal are not ripe as long as the criminal proceedings (including appeals and post-conviction proceedings) are ongoing. Heck v. Humphrey, 512 U.S. 477, 486-487, 489 (1994). "The proper approach in our federal system generally is for a criminal defendant who

8

believes that the criminal proceedings against him rest on knowingly fabricated evidence to defend himself at trial and, if necessary, then to attack any resulting conviction through collateral review proceedings." McDonough v. Smith, 139 S. Ct. 2149, 2158-59 (2019).

Based on prematurity, I recommend that the motion to dismiss be granted

## II.     ANALYSIS OF ADDENDUMS

After the motion to dismiss was filed and fully briefed, Plaintiff filed the Addendums. ECF No. 12. It reprises some familiar themes but also seems to raise what might be new claims. What follows is my very preliminary analysis of the allegations in the Addendums; this is not intended as a ruling on what is and is not a viable claim but rather is to provide Plaintiff with guidance as he considers whether to file an amended complaint that incorporates any of the Addendums' allegations.

First, Plaintiff alleges that the State failed to train and supervise its superior court employees as evidenced by Magistrate McBurney's issuance of an illegal arrest warrant and by other state government employees who "conspired to perpetrate the alleged criminal activity resulting in injury to Plaintiff via an illegal incarceration at the State's A.C.I. since September 16, 2019." Addendum at 1. Among those accused are "Magistrates/Judges that are named in [Plaintiff's] Exhibit A,[8] and the R.I. State Attorney General, Peter Neronha, and his staff members who have assisted in the wrongfull prosecution of Plaintiff." Id. at 3. Plaintiff claims that the State "perpetuated the fore-mentioned crimes by reportedly using Constitutionally invalid state law, or laws, that are still unknown to Plaintiff, as justification for violating Plaintiff's 5th Amendment Rights against Double Jeopardy." Id. at 2. Plaintiff asks for money damages, as well as a referral for criminal prosecution of the judges and prosecutors "in a

---

[8] Exhibit A is not included so it is impossible to ascertain who are intended to be named.

9

'neutral' state, . . . such as New York City's Federal Court." Id. at 3. He also seeks to have his Rhode Island criminal case transferred to this Court for trial "since the Defendants are required to testify regarding their criminal activities towards Plaintiff." Id. at 4. He requests court orders for his immediate release and directing the State to repeal the abusive laws it "is using to violate citizens' Constitutional Rights from its State Statutes to remedy this cause." Id. at 2. If his request for immediate release is not granted, he seeks to be returned immediately to federal custody, "preferably to the medical facility at Ft. Devens." Id. at 4.

As potential new claims, to the extent that these allegations seek release from State custody, seek to enjoin a State proceeding or are based on the Double Jeopardy Clause, they are likely doomed for the same reasons that underpin my recommendation that the pending complaint be dismissed. To the extent that they seek criminal prosecution of State officials, they are likely subject to dismissal for failure to state a claim. Uzamere v. United States, No. CA 13-505 S, 2013 WL 5781216, at *10 (D.R.I. Oct. 25, 2013), aff'd (Apr. 11, 2014) (enforcement of criminal statutes is "within the discretion of the prosecutor," and private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). And to the extent that they seek damages from judges or prosecutors, they would likely be subject to summary dismissal because such persons are protected by judicial and prosecutorial immunity. 28 U.S.C. § 1915(3)(2)(B)(iii); see King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992) (magistrate entitled to absolute immunity under same conditions as judges); Dicenzo v. Mass. Probate & Family Court, No. 15-CV-30171-MAP, 2015 WL 9690895, at *5 (D. Mass. Nov. 19, 2015), adopted, 2016 WL 128127 (D. Mass. Jan. 12, 2016) ("Absolute immunity applies to prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process,'") (citing Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009)); id. (judges are immune

when "acting within the scope of their duties") (citing Imbler v. Pachtman, 424 U.S. 409, 422-423 (1976)).  Similarly, Plaintiff is barred from recovering damages from the State or any of its employees in their official capacities under § 1983.  Goulet v. Rhode Island, No. CA 14-466 S, 2015 WL 5615719, at *2 (D.R.I. Sept. 24, 2015) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991)) ("It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.").

Second, and more likely possibly to state a claim, is Plaintiff's allegation of "gross medical negligence" by ACI medical staff based on their "reckless, serious indifference and disregard for Plaintiff's Constitutional Right to medical treatment under the 8th Amendment." Addendum at 3-4.  Plaintiff alleges that he had a heart "incident," alerted ACI staff to the issue but they failed to provide him with proper medical treatment, causing "undetermined longterm damage to Plaintiff's health and well-being." Id. at 4.  Plaintiff also alleges that he was denied dental and eye care.  Id.  As a remedy, Plaintiff seeks money damages and an order that the State must provide him with "uninterrupted lifetime, full and complete, medical insurance coverage, including full dental, eye-sight, and glasses at absolutely no cost to Plaintiff."  Id.  While the latter remedy may be out of reach and it is far from clear that these claims are adequate to plead the serious deprivation required for a plausible Eighth Amendment claim, there is no question that prisoners have the right to be free from "deliberate indifference to serious medical needs." Villar v. Buttermore, No. 1:12-CV-424-WES, 2013 WL 3945914, at *7 (D.N.H. July 31, 2013) ("The failure of correctional officials to provide inmates with adequate medical care may offend the Eighth Amendment if their acts or omissions are sufficiently harmful to evidence deliberate indifference to serious medical needs.") (citing Estelle v. Gamble, 429 U.S. 97 (1976)).

To incorporate any of these allegations into a claim, Plaintiff must file an amended complaint, which must comply with the requirements of Fed. R. Civ. P. 8(a) and 10, including:

1. A short and plain statement of the claim showing that the pleader is entitled to relief;

2. The names of all defendants in the caption;

3. Allegations in separately numbered paragraphs;

4. Adequate factual notice to each defendant of the nature and basis of the claims against each;

5. Where and when the acts or omissions about which the pleader complains occurred and who allegedly committed those acts or omissions; and

6. For each defendant, the basis for the claim, the right violated and the relief sought.

The amended complaint must contain all of the allegations in the original complaint that Plaintiff wishes to retain, as well as the new factual material on which he relies; this amended complaint will entirely displace the original pleading. See Global ePoint, Inc. v. GTECH Corp., 58 F. Supp. 3d 178, 190 (D.R.I. 2014) (citing Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008)) ("amended complaint typically renders the original complaint 'dead letter'").

An important caution to Plaintiff: if he amends his complaint with claims that are subsequently dismissed as frivolous or malicious or for failing to state a claim, as a prisoner proceeding *in forma pauperis* ("IFP"), he will have "a strike" under the "three-strikes rule." The "three-strikes rule" requires the Court to deny IFP status except in extraordinary circumstances for any prisoner who has brought three or more cases that were dismissed as frivolous, malicious or for failing to state a claim. 28 U.S.C. § 1915(g); see Martinez v. Duffy, No. CV 18-21WES, 2018 WL 1224458, at *1 (D.R.I. Mar. 8, 2018) (citing Coleman v. Tollefson, 135 S. Ct. 1759, 1763 (2015)).

III. CONCLUSION

Based on the foregoing, I recommend that Defendant's Motion to Dismiss (ECF No. 8) be granted, but that Plaintiff be afforded leave to amend within thirty days of the Court's adoption of my report and recommendation. See 28 U.S.C. §§ 1915(e)(2), 1915A. If Plaintiff opts not to file an amended complaint within that time period, or if his amended complaint fails to cure the deficiencies identified above, I recommend that the case be summarily dismissed for failure to state a claim.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 30, 2020