UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GERALD J. SILVA,                              :
              Plaintiff,               :
                           :
     v.                                    :      C.A. No. 19-568JJM
                           :
STATE OF RHODE ISLAND, et al.,          :
              Defendants.             :

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

       Before the Court is Defendant Dr. Jennifer Clarke's Fed. R. Civ. P. 12(b)(6) motion to dismiss (ECF No. 23) Plaintiff Gerald J. Silva's amended complaint for failure to state a claim. Plaintiff is a *pro se*[1] prisoner detained at Rhode Island's Adult Correctional Institutions ("ACI") awaiting trial on the charge of "Sexual Offender Registration Required" in violation of R.I. Gen. Laws § 11-37.1-3. Rhode Island v. Silva, Case No. P2-2019-3668A. Since this case was filed on October 23, 2019, Plaintiff's original complaint was dismissed with leave to amend and his amended complaint was screened pursuant to 28 U.S.C. § 1915. What has survived are Plaintiff's Eighth Amendment claims of inadequate medical care brought pursuant to 42 U.S.C. § 1983 against Defendants State of Rhode Island and Dr. Jennifer Clarke, named in her individual and official capacities. See ECF No. 16 at 1-2, 25-26 ¶ 8 (Am. Compl.); see also ECF Nos. 14 & 19 (Report and Recommendations, adopted Apr. 20 & June 18, 2020, respectively). Defendant Clarke's motion to dismiss was referred to me on July 21, 2020. Based on the following reasons, I recommend that the motion be granted in part and denied in part.

### I.      BACKGROUND

---

[1] Due to his *pro se* status, Plaintiff's filings have been read with the leniency. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Silva v. Farrell, C.A. No. 18-650JJM, 2019 WL 2501887, at *1 (D.R.I. Jan. 15, 2019), adopted, 2019 WL 2500668 (D.R.I. Jan. 30, 2019).

Plaintiff's amended complaint (ECF No. 16) alleges that ACI staff refused to give him "Plaintiff's life sustaining medication until <u>after</u> Plaintiff had a major medical incident on the night of 9/21-22/20 [sic], for which they withheld treatment, except for the 'wrong' medication until 2 ½ months <u>after</u> the incident."  Am. Compl. at 12 (emphasis in original).  While sparse, the pleading permits the inference that the ACI staff's ongoing withholding of prescribed medication resulted in "a major medical heart incident occurring during the night of 9/21-22/19."  <u>Id.</u> at 25. To link Dr. Clarke to the conduct, the amended complaint asserts that these staff members acted "under the supervision of Defendant Clarke" with "deliberate indifference to Plaintiff's basic Human Medical needs . . . that resulted in a near fatal medical incident causing damage to Plaintiff's heart which poses an unreasonable risk of serious damage to Plaintiff's future health." <u>Id.</u> at 28.  The pleading permits the inference that inadequate supervision by Dr. Clarke resulted in deliberate indifference by staff in that Plaintiff did not receive "a thorough evaluation until approximately 2 ½ months after the incident on 11/25/19," at which time an "x-ray exhibited damage to the top of Plaintiff's heart."  <u>Id.</u> at 25.  The complaint also alleges that Dr. Clarke "learn[ed] of the violation," yet failed to remedy the situation.  <u>Id.</u> at 25-26.

Recognizing that the pleading itself is factually somewhat thin and mindful of Plaintiff's *pro se* status, the Court also considers the facts added in Plaintiff's opposition to the motion to dismiss.  ECF No. 24.  These establish that Plaintiff was "report[ing] daily to med-line from 9/17/19 thru 9/24/19 to request the needed life sustaining medication," as well as that the medication he asked for had been "prescribed by qualified medical professionals over the past 30 years."  ECF No. 24 at 4-5.  To supplement the allegation that Dr. Clarke became directly aware of the ongoing medical crisis, yet did nothing, Plaintiff claims that he sent a "Grievance . . . to Dr. Clarke on 11/17/19 and the follow-up letter dated 12/17/19," but "the indifference to

Plaintiff's Medical Care continues as of the writing of this document."  ECF No. 24 at 7.  In summary, Plaintiff claims:

> The true facts of this case have persistently evidenced that not only did [Dr. Clarke] have knowledge of the deliberate indifference by her staff towards Plaintiff's necessary medical needs, but participated in the continuance by her staff of that indifference, and failed in her supervisory responsibilities and duties to correct the systematic deficiencies under her authority that continue to contribute to the grossly inadequate medical care at her facility.

ECF No. 24 at 11.

Unrelated to these allegations is Plaintiff's conclusory assertion (with no supporting facts) that Dr. Clarke was deliberately indifferent to his medical needs because ACI staff refused to provide vision care on November 3, 2019, and dental treatment on November 5, 2019.  ECF No. 16 at 25; ECF No. 24 at 7.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995).  If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied.  Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).  While a plaintiff need not plead factual allegations in great detail, to survive a motion to dismiss, a pleading must contain sufficient factual allegations to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

3

The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The task of dividing "the plausible sheep from the meritless goats" is accomplished through careful, context-sensitive scrutiny of a complaint's allegations. Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014). The Court must then determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

## III.   LAW AND ANALYSIS

The medical treatment a prisoner receives in prison is subject to scrutiny under the Eighth Amendment.[2] Farmer v. Brennan, 511 U.S. 825, 832 (1994). The failure of correctional officials to provide inmates with adequate medical care may offend the Eighth Amendment if their acts or omissions amount to "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To succeed on an Eighth Amendment claim based on the refusal to provide prescribed medical care, a plaintiff must show, first, that the deprivation alleged was objectively, sufficiently serious, and second, that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497-98 (1st Cir. 2011). The objective "seriousness" prong

---

[2] Technically, as a pretrial detainee, Plaintiff's claim arises under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. Burrell v. Hampshire Cty., 307 F.3d 1, 7 (1st Cir. 2002). However, the law is clear that, in this context, the substance of the Due Process Clause protection is the same as that applied in the more familiar Eighth Amendment cases; therefore, the Eighth Amendment is usually the constitutional provision referred to by courts. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 n.21 (1st Cir. 2011); Hasen v. LaJeunesse, 175 F.3d 68, 71 n.1 (1st Cir. 1999). Following this practice, I refer to the Eighth Amendment but recognize that the actual constitutional provision in play is the Due Process Clause of the Fourteenth Amendment. See Ford v. Bender, 768 F.3d 15, 24 (1st Cir. 2014); Jacks v. Spencer, Civil Action No. 14-13072-MBB, 2016 WL 2626858, at *4 (D. Mass. May 6, 2016).

requires that the need be "one that has been diagnosed by a physician as mandating treatment,"

Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), and that the care

provided is "so inadequate as to shock the conscience."  Torraco v. Maloney, 923 F.2d 231, 235

(1st Cir. 1991).  The subjective prong requires that the prison officials sued exhibited deliberate

indifference to the prisoner's needs, not just inadvertence or negligence.  Estelle, 429 U.S. at

105-06.  A medical professional sued in her supervisory capacity may be liable under § 1983

only if the plausible facts establish that her own acts and omissions link her to the conduct:

> [S]upervisory liability typically arises in one of two ways: either the supervisor
> may be a "primary violator or direct participant in the rights-violating incident,"
> or liability may attach "if a responsible official supervises, trains, or hires a
> subordinate with deliberate indifference toward the possibility that deficient
> performance of the task eventually may contribute to a civil rights deprivation."

Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (quoting Camilo-Rubles v. Zapata,

175 F.3d 41, 44 (1st Cir. 1999)).  Liability cannot be grounded in the traditional tort principle of

respondeat superior.  Leavitt, 645 F.3d at 502.

Assuming the truth of Plaintiff's basic facts – that, as an older individual, he had long

been prescribed medication for a serious heart condition, but, over an extended period at the

ACI, he never received a thorough evaluation of his heart and the prescribed medication was

deliberately withheld by ACI staff, resulting in a serious heart incident – this pleading (including

the facts added by the brief in opposition to the motion) is more than sufficient in that it

encompasses all of the elements of an Eighth Amendment claim.  And while it is thin on facts to

establish that Dr. Clarke may be individually liable under § 1983 either as a direct actor or for

her deliberately indifferent supervision and training of the medical staff who engaged in this

facially wrongful conduct, there is enough to squeak past the Twombly/Iqbal bar in that Plaintiff

alleges that Dr. Clarke was made personally aware of the situation after the heart incident, yet

she still took no action, as well as that the refusal to evaluate an older prisoner reporting a heart condition, and particularly the refusal to provide prescribed heart medication day after day for an older individual, permits the inference of a failure of training and supervision serious enough to amount to deliberate indifference.  Based on these allegations, the claim against Dr. Clarke in her individual capacity has just enough heft to implicate the Eighth Amendment's prohibition against "cruel and unusual punishment" at the pleading stage.  Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc).  Therefore, I recommend that Dr. Clarke's motion to dismiss be denied with respect to the individual capacity claim that the refusal to provide prescribed medication for Plaintiff's heart condition transgressed the Eighth Amendment.

Plaintiff also names Dr. Clarke in her official capacity.  This is surplusage in that Plaintiff's official capacity claims against Dr. Clarke run only against the State, which is already named as a defendant in this case.  As the alter ego of the State, Rhode Island officials acting in their official capacity cannot be held liable for damages arising out of constitutional violations because they are not seen as persons to be sued under the law.  Jones v. Rhode Island, 724 F. Supp. 25, 28 (D.R.I. 1989) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)).  Therefore, Plaintiff's claims against Dr. Clarke in her official capacity fail as a matter of law.  I recommend that they be dismissed.

Finally, although such a deprivation could implicate the Eighth Amendment, see Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (Eighth Amendment extends to dental care), in this case, Plaintiff's claims of inadequate dental and vision care are supported by no facts at all.  Therefore, they fall woefully short of the plausibility line drawn by the United States Supreme Court.  Twombly, 550 U.S. at 546.  I recommend they be dismissed.

**IV.     CONCLUSION**

6

Based on the foregoing, I recommend that Defendant Dr. Jennifer Clarke's Motion to Dismiss (ECF No. 23) be granted with respect to the official capacity claims and the claims of inadequate vision and dental care, but denied with respect to the claim of inadequate medical attention to Plaintiff's heart condition against her in her individual capacity.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 1, 2020