UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GERALD J. SILVA,<br>        Plaintiff, | :<br>:<br>: |
| v. | :    C.A. No. 19-568JJM |
| STATE OF RHODE ISLAND, et al.,<br>        Defendants. | :<br>:<br>: |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In this case arising under 42 U.S.C. § 1983, Plaintiff, a *pro se*[1] pretrial detainee at Rhode Island's Adult Correctional Institutions ("ACI"), seeks money damages from the former medical director of the Rhode Island Department of Corrections ("RIDOC"), Dr. Jennifer Clarke, and injunctive relief from the State of Rhode Island based on his claim of past and ongoing deliberate indifference to his need for adequate medical treatment for a serious cardiac condition, as well as for other medical needs. Because he remains dissatisfied with the medical treatment he is currently receiving, Plaintiff filed a motion for an immediate transfer into federal custody, preferably to the Fort Devens, F.C.I. Medical Facility ("Devens").[2] ECF No. 30. The Court has

---

[1] Mindful of Plaintiff's *pro se* status, the Court has examined his pleadings with the leniency mandated by our Circuit Court. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 79 (1st Cir. 2014).

[2] Plaintiff's transfer motion also has a passing mention of his belief that Devens will better meet his "[l]egal needs." ECF No. 30 at 3. The Court assumes that this references access to copy machines and a law library, in that Plaintiff has stated during hearings that RIDOC's facilities are inadequate. This aspect of Plaintiff's motion is seriously underdeveloped; Plaintiff has not raised any specific denial of access that has actually inflicted injury as required by Lewis v. Casey, 518 U.S. 343, 349 (1996). To the contrary, in each instance when Plaintiff complained of specific consequences arising from denial of access to a copy machine or a law library, the Court directed counsel for the State to rectify the issue, for example by hand delivery of copies of pertinent materials. E.g., Text Order of Feb. 9, 2021. In any event, the Court's inability to order Plaintiff into federal custody with placement at Devens is equally applicable whether Plaintiff seeks the transfer to get better medical treatment pursuant to the Fourteenth and Eighth Amendments or to have better access to the courts.

interpreted the motion as one seeking injunctive relief.[3]  Therefore, I am addressing it by report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  In so doing, I have divided the motion into two parts.  First, in this report and recommendation, I address only Plaintiff's request for transfer into federal custody, preferably to Devens, so that his medical needs can be met.  Second, mindful of Plaintiff's *pro se* status, I have alternatively interpreted the motion as seeking an interim injunction ordering the State to provide urgently needed medically appropriate assessments and diagnostic testing and, if medically necessary, treatment for any of Plaintiff's serious medical issues.  That aspect of the motion remains pending subject to further proceedings following the filing of a sworn statement from a physician that I ordered the State to supply.  See Feb. 25, 2021 Text Order.

For the reasons that follow, I recommend that the motion for a transfer into federal custody (preferably to Devens) be denied.

## I.     BACKGROUND

Plaintiff's criminal and civil litigation history has been laid out in several judicial decisions in this and other cases.[4]  In brief, Plaintiff is a federally convicted sex offender who was sentenced on June 27, 2014, to serve seventy-two months in prison, with a fifteen-year term of supervised release to follow.  Silva, No. 13-cr-43JJM, ECF No. 86; United States v. Silva, 794

---

[3] Alternatively, the motion to transfer could be interpreted as a habeas petition pursuant to 28 U.S.C. § 2241 or § 2254 to the extent that it seeks a less restrictive form of custody at Devens.  See United States v. Eisenberg, Criminal No. 16-cr-00157-LM, 2020 WL 1308194, at *2 (D.N.H. Mar. 19, 2020).  However, a claim alleging inadequate medical care is generally addressed pursuant to § 1983, not as a habeas corpus petition.  See Kamara v. Farquharson, 2 F. Supp. 2d 81, 88 (D. Mass. 1998).  That is, if a state prisoner is seeking different treatment or a different environment, he is challenging the conditions of confinement rather than the fact of confinement; therefore, his remedy is under civil rights law.  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 873 (1st Cir. 2010).

[4] See, e.g., United States v. Silva, 794 F.3d 173, 176-77, 182-85 (1st Cir. 2015); Silva v. Rhode Island, C.A. No. 19-568JJM, 2020 WL 5258639 at *1-2 (D.R.I. Sept. 1, 2020), adopted by Text Order, (D.R.I. Sept. 16, 2020); Silva v. Rhode Island, C.A. No. 19-568JJM, 2020 WL 1502279, at *1-3 (D.R.I. Mar. 30, 2020), adopted by Text Order, (D.R.I. Apr. 20, 2020); see also United States v. Silva, No. 13-cr-43JJM, ECF No. 128 at 2-9, 12-14, 16-18 (D.R.I. July 24, 2019).

F.3d 173, 185 (1st Cir. 2015) (affirming conviction).  After he completed the incarcerative portion of his federal sentence, Plaintiff was released from federal custody on May 3, 2019.  Silva, No. 13-cr-43JJM, ECF No. 128 at 12-13.  Id.  He returned to Rhode Island and appeared in the office of U.S. Probation in Providence on May 7, 2019.  Id. at 13.  He advised the on-duty probation officer that he had not, and would not, abide by any supervised release conditions, including the condition that he must comply with federal and state law regarding the registration of sex offenders.  Id. & 13 n.14.

On May 8, 2019, Plaintiff was arrested in Rhode Island on a federal warrant issued based on U.S. Probation's petition charging him with violating various supervised release conditions, including noncompliance with federal and state law regarding the registration of sex offenders.  Silva, No. 13-cr-43JJM, ECF No. 128 at 4-5.  He was detained on the supervised release violation charges until he appeared before the District Court on September 16, 2019.[5]  At the final hearing on revocation of supervised release, the Court found that Plaintiff had violated conditions as charged, revoked supervision and imposed a sentence of the time already served during detention, to be followed by a new term of fifteen years of supervised release with certain conditions.  Silva, No. 13-cr-43JJM, Minute Entry of Sept. 16, 2019; ECF No. 131.  Judgment entered the next day.[6]  Silva, No. 13-cr-43JJM, ECF No. 131.  Meanwhile, a warrant had been

---

[5] At the outset of the federal supervised release proceedings, on May 8, 2019, the Court appointed the Office of the Federal Defender to represent Plaintiff.  Plaintiff declined counsel, insisting on proceeding *pro se*.  Silva, No. 13-cr-43JJM, ECF No. 128 at 5; Minute Entry of May 8, 2019.  In response, the Court appointed the Office of the Federal Defender to serve as stand-by counsel for Plaintiff.  Id. at ECF No. 128 at 5.  Based on this order, Court-appointed stand-by counsel was present and participating at every phase of the supervised release proceeding, including at the final hearing on September 16, 2019.

[6] Plaintiff's appeal of this judgment was dismissed as without merit and untimely on October 16, 2020.  United States v. Silva, No. 20-1150 (1st Cir. Oct. 16, 2020).  His motion under 28 U.S.C. § 2255 to vacate this sentence, filed while the appeal was pending, was denied without prejudice to being refiled after the issuance of the mandate from the First Circuit in connection with the appeal.  United States v. Silva, No. 13-cr-43JJM, Text Order of Sept. 28, 2020.  The mandate issued on November 6, 2020, but Plaintiff did not refile the § 2255 motion.  See United States v Silva, No. 20-1150 (1st Cir. Nov. 6, 2020).

issued by the State,[7] ECF No. 30 at 1, based on which Plaintiff was arrested and taken into State custody where he remains awaiting trial on a State felony charge of failure to register.[8]

Plaintiff filed this civil case on October 23, 2019. As originally framed, it challenged the State's prosecution for failing to register as "seeking to try [Plaintiff] for the same issues creating Double Jeopardy by consequencing [Plaintiff] twice for the same issues, which is a clear violation of [Plaintiff's] Fifth Amendment Rights." Silva, 2020 WL 1502279, at *2. The complaint sought an emergency injunction "directing Providence Superior Court and all R.I. Authorities to immediately stop their involvement with this Federal Case, and to return [Plaintiff] to Federal custody to address and resolve any remaining issues regarding this situation." Id. at *3. Embedded in an Addendum, Plaintiff alleged that RIDOC officials, including then-medical director Dr. Jennifer Clarke, had acted with deliberate indifference to Plaintiff's need for medical treatment in violation of his rights under the Eighth Amendment.[9] Id. at *5-6.

---

[7] In his complaint in another civil case, Plaintiff references this warrant, alleging that he "was arrested on an alleged illegal warrant issued by politically appointed Defendant State Magistrate John F. McBurney III." Silva v. Smith, 20-cv-12-PJB-AKJ, ECF No. 1 at 15. Plaintiff confirms this in the opening sentence of the motion to transfer: "Plaintiff was incarcerated at the Rhode Island Department of Corrections on 9/16/19 for a 'Failure to Appear' Warrant issued by State Magistrate John F. McBurney III." ECF No. 30 at 1

[8] For the proposition that Plaintiff's state charge is felonious failure to register, I rely on the representation of counsel for the State made during the hearing on February 25, 2021.

[9] As a pretrial detainee, Plaintiff's constitutional right to adequate medical care technically derives not from the Eighth Amendment, but rather from his right under the Due Process Clause of the Fourteenth Amendment to be free of punishment. See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005); Spencer v. City of Bos., Civil Action No. 13-11528-MBB, 2015 WL 6870044, at *7 (D. Mass. Nov. 6, 2015) ("constitutional violations based on denied or inadequate medical care brought by pretrial detainees are analyzed under the substantive component of the Due Process Clause of the Fourteenth Amendment"). Since Kingsley v. Hendrickson, 576 U.S. 389 (2015), it has been unclear whether a pretrial detainee asserting a Fourteenth Amendment claim based on denial of medical care must show deliberate indifference (as required by the Eighth Amendment), or that the conduct "purposely or knowingly used against him was objectively unreasonable." Id. at 397; see Gomes v. U.S. Dep't of Homeland Sec., 460 F. Supp. 3d 132, 145-48 (D.N.H. 2020) (noting Circuit split and observing that, post-Kingsley, First Circuit has applied Eighth Amendment deliberate indifference standard to pretrial detainee medical claims twice but that those decisions do not foreclose a ruling that Kingsley changed standard); cf. Medeiros v. Martin, 458 F. Supp. 3d, 122, 128 & 128 n.1 (D.R.I. 2020) (accepting parties' agreement that objective unreasonableness was the appropriate post-Kingsley standard in immigration civil detainee matter).

4

Except for Plaintiff's claim of denial of necessary medical treatment, the Court granted the State's motion to dismiss, holding that the Fifth Amendment's Double Jeopardy clause does not bar a State prosecution for a crime based on the same conduct that formed the basis for the federal supervised release violation. Silva, 2020 WL 1502279, at *3-4. The Court alternatively dismissed the claim based on the abstention doctrine created by Younger v. Harris, 401 U.S. 37, 46 (1971), which bars inappropriate federal court intervention with an ongoing State prosecution. Silva, 2020 WL 1502279, at *4. Finally, the Court interpreted the challenge to the State's prosecution as seeking release from state custody pursuant to 28 U.S.C. § 2254 and, to that extent, dismissed it as premature based on Plaintiff's failure to exhaust state remedies. Id. at *4. Based on these rulings, what continues to be in issue in this case are Plaintiff's allegations of deliberate indifference to his serious medical needs against Dr. Clarke for damages and against the State for injunctive relief.

## II. PROCEEDINGS ON MOTION TO TRANSFER

Plaintiff's motion to transfer into federal custody, preferably at Devens, was filed on December 7, 2020. ECF No. 30. As of the filing of the motion, Plaintiff had been detained at the ACI for well over a year; in connection with his State criminal case, he had had an attorney appointed to represent him, discharged her, had had a second attorney appointed to represent him and, as he advised me during the hearing, has also discharged him or is planning to do so. The transfer motion alleges that Plaintiff seeks a transfer because ACI officials are ignoring his chronic health issues, he was assigned to a top bunk, forcing him to sleep on the floor, and his glasses are held together with adhesive material from deodorant packaging. Id. at 2-3. However, during the hearing on February 5, 2021, Plaintiff advised the Court that his complaint about his bunk assignment had been resolved and, during the February 25, 2021, hearing, that he had just

been seen by a physician.  Further, the Court's observations over the three hearings held so far on the motion to transfer establish that Plaintiff's glasses, which are clearly broken, are nevertheless still usable.  In short, the motion itself does not appear to raise issues that are medically serious.  Nevertheless, in light of the potentially serious medical issues implicated by Plaintiff's amended complaint (failure to provide prescribed medication for a serious cardiac condition), exacerbated by the length of Plaintiff's pretrial detention,[10] at my first hearing on the motion, I advised the parties of my intent to attempt to appoint counsel for Plaintiff in this case from the Court's *pro bono* panel.  Minute Entry of Dec. 18, 2020.  This effort was unsuccessful.  ECF No. 33.  At the second hearing on the motion, I directed the State's counsel to investigate and report back to the Court on Plaintiff's medical and criminal status.  Text Order of Feb. 9, 2021.  At the third hearing on the motion, the State presented its medical/legal report and the parties presented their arguments on the motion to transfer to Devens.  Minute Entry of Feb. 25, 2021.

      Based on the proceedings so far, the Court is satisfied that Plaintiff's complaint about the assignment to the top bunk has been resolved, but that Plaintiff's trial on the pending state criminal charges is not expected to occur until August and he again has no attorney representing him in the state criminal case because he has discharged (or will soon) the second appointee.  Further, while the State advised the Court that Plaintiff was recently seen by a physician and Plaintiff confirmed that the possibility of various diagnostic tests was discussed, it remains unknown whether there will be appropriate follow-up as Plaintiff continues awaiting trial in state

---

[10] The Court's concern, candidly discussed with the parties, is whether Plaintiff's alleged chronic medical needs (for example, the potential need for an annual physical to monitor the progress of cardiac disease) are being met in light of his classification as a pretrial detainee, yet his detention has been ongoing for more than a year and appears likely to continue until, at least, August 2021, when his case is now set for trial, as counsel for the State advised the Court during the February 25, 2021, hearing on the motion to transfer.

custody. Accordingly, I divided Plaintiff's motion into two parts: first, I took under advisement Plaintiff's motion that he be transferred into federal custody, preferably to Devens; second; I directed the State to file an affidavit from a physician regarding Plaintiff's medical needs and how they are being met, following which the Court will conduct further proceedings to determine whether an interim injunction to address serious medical needs is appropriate. This report and recommendation addresses only the first issue – Plaintiff's motion for a mandatory injunction ordering that he be transferred into federal custody, preferably to Devens.

### III.  STANDARD OF REVIEW

"To secure a preliminary injunction, a plaintiff must show: '(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.'" NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020) (quoting Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)). "[T]he first two factors, likelihood of success and of irreparable harm, [are] 'the most important' in the calculus." Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (quoting González-Droz v. González-Colón, 573 F.3d 75, 79 (1st Cir. 2009)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 24 (2008). "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." Id. at 24 (internal quotation marks omitted).

Mandatory injunctions ordering affirmative action by a defendant, which is what Plaintiff requests here, "'normally should be granted only in those circumstances when the exigencies of the situation demand such relief.'" Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 41 (1st Cir. 2010) (quoting Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency, 649 F.2d 71, 76 n.7 (1st Cir. 1981)); Harris v. Wall, 217 F. Supp. 3d 541, 553 (D.R.I. 2016) (same). For example, an interim mandatory injunction requiring the adoption of appropriate COVID-19 testing protocols for detainees at the Massachusetts' Bristol County House of Correction was ordered based on evidence of a seriously flawed COVID prevention strategy to address the substantial risk of harm (viral spread in a jail). Savino v. Souza, 459 F. Supp. 3d 317, 328-33 (D. Mass. 2020); see Brooks v. Ayotte, Civil No. 07-cv-411-JD, 2008 WL 818804, at *11-12 (D.N.H. Jan. 18, 2008) (ordering preliminary injunction mandating confinement in conditions with proper medical treatment based on evidence that detainee's diabetes was serious and could not be properly treated in facility to which he was transferred). Nevertheless, the law is clear that "[d]istrict courts should exercise caution in issuing injunctive orders and avoid becoming 'enmeshed in the minutiae of prison operations.'" Kealoha v. Espinda, Civil No. 20-00323 JAO-RT, 2020 WL 5602837, at *3 (D. Haw. Sept. 18, 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

### IV.   ANALYSIS AND RECOMMENDATION

For purposes of the first issue posed by the motion to transfer – whether Plaintiff has presented a sufficiency of evidence to justify a mandatory injunction ordering that he be transferred into federal custody (preferably at Devens) to meet his medical needs – the Court is deflected from analyzing the likelihood of success and irreparable harm prongs[11] embedded in

---

[11] If the Court hypothesizes both that Plaintiff is going to succeed on the merits of his claim of ongoing denial of medical treatment, as well as that the remedy of transfer to Devens or another federal facility is available as a matter

8

the transfer motion by the legal reality that the remedy Plaintiff seeks is not available as a matter of law.

The analytical starting point is the bedrock legal principle that the Constitution does not entitle individuals to choose where they are incarcerated. Olim v. Wakinekona, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."). Thus, even for defendants in federal custody, courts "ha[ve] no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."[12] Fisher v. Goord, 981 F. Supp. 140, 176 (W.D.N.Y. 1997) (internal quotation marks omitted). Only in certain extreme and extraordinary situations, however, where there is an "unusually high risk of physical danger" to an inmate, Walker v Lockart, 713 F.2d 1378, 1383 (8th Cir. 1983), or where an inmate is exposed to "conditions considerably more dangerous than

---

of law so that the Court must consider irreparable harm, I propose that the Court find that Plaintiff has not presented evidence of an unmet medical need serious enough to justify the extraordinary remedy of a mandatory injunction transferring him out of the ACI into federal custody. Rather, the evidence establishes that RIDOC had already resolved his bunk complaint before the first hearing on the motion, as well as that, by the second hearing on the motion, RIDOC had arranged for Plaintiff to see a physician, who (as Plaintiff himself told the Court) is considering whether to order diagnostic tests and to authorize medication. Meanwhile, Plaintiff also told the Court that at least some medical needs are being met in that he has been receiving physical therapy. My order that the State file a physician affidavit regarding the plan to implement needed treatment (including to address the broken glasses) is pending. Therefore, I find that Plaintiff has failed to sustain his burden of showing significant risk of irreparable harm unless he is shifted into federal custody; for this additional reason, I recommend that Plaintiff's request for an injunction transferring him to Devens (or any other federal facility) be denied. See Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (pretrial detainee must "prove that she has a medical need that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," resulting in care that is "so clearly inadequate as to amount to a refusal to provide essential care") (internal quotation marks omitted). Whether Plaintiff can show irreparable harm to justify an injunction requiring RIDOC to provide medical treatment remains unresolved; that will be considered when the Court conducts further proceedings regarding the second phase of the pending motion.

[12] This principle is also true for a federal pretrial detainee. That is, if Plaintiff were a federal pretrial detainee (which he is not), he would likely be sent to the Wyatt Detention Facility, not to Devens. The Court observes that a transfer to the Wyatt Detention Facility would put Plaintiff in a facility he has already sued once for inadequate medical care. See Silva v. Martin, 19-cv-479JJM.

those in normal prison life," Streeter v. Hopper, 618 F.2d 1178, 1181 (5th Cir. 1980), does a federal court have the authority to order a state to transfer a prisoner to another state facility.

Whatever limited power the Court may have to order transfer from one state facility to another, "such a power does not extend to order the state to transfer a prisoner to the federal prison system, or to requir[e] the federal prison system to accept the prisoner." Dunbar v. Caruso, No. 11-10123, 2012 WL 3308407, at *1 (E.D. Mich. Aug. 13, 2012) (internal quotation marks omitted); see Kealoha, 2020 WL 5602837, at *6 (federal "[c]ourt lacks the authority to" transfer state pretrial detainee into federal custody to receive medical treatment); Moore v. Schuetzle, 486 F. Supp. 2d 969, 981 (D.N.D. 2007) ("The fact that this Court may arguably have the power in rare and extreme cases to order state officials to transfer a prisoner does not mean that it has the power and authority to force federal prison officials to accept [plaintiff] as a prisoner for service of the remainder of his state sentence."), aff'd as modified, 289 F. App'x 962 (8th Cir. 2008) (per curiam).  "[W]hen a state has primary custodial jurisdiction over an inmate, a federal court cannot order the delivery of the defendant for service of a sentence [to] a federal institution.  Such an order would be tantamount to a transfer of custody beyond the jurisdiction of the federal court." Fisher, 981 F. Supp. at 176 (citing United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)); see Quezada v. Fischer, No. 9:13-CV-0885 (MAD/TWD), 2014 WL 1289606, at *5 (N.D.N.Y. Mar. 31, 2014) ("court lacks the authority to order the placement of a state prisoner into the custody of a federal agency"), appeal dismissed, No. 14-1459 (2d Cir. Sept. 10, 2014); cf. Warren, 610 F.2d at 684 (court's "authority to 'correct an illegal sentence' or to 'correct a sentence imposed in an illegal manner' does not include a general authority to transfer an inmate from state to federal custody").  "'[E]ven if Plaintiff's allegations are sufficient to show that he is in imminent danger of bodily harm,'" this Court cannot order a state prisoner,

including one who is a state pretrial detainee, to be transferred into federal custody. Kealoha, 2020 WL 5602837, at *6 (quoting Dunbar, 2012 WL 3308407, at *1).

Plaintiff's transfer motion also fails because neither the Federal Bureau of Prisons, nor the United States Marshal's Service, nor the Warden of Devens are parties to this action. That is, the Court cannot order a non-party federal agency to place Plaintiff or a non-party federal facility to accept Plaintiff. Kealoha, 2020 WL 5602837, at *6 (court lacks authority to issue injunction directed at non-party). Nor can or should the Court order that a non-party agency must shuttle Plaintiff back and forth between federal and state custody as he is required to appear in connection with the ongoing State prosecution. Cf. Interstate Agreement on Detainers Act ("IAD"), Pub. L. No. 91-538, 84 Stat. 1397 (1970) (anti-shuttling provisions prevent movement between prosecuting jurisdictions except in specified circumstances). In short, because Plaintiff is "incarcerated solely on the basis of a state [charge], the legality of which is not before this Court . . . this Court has no authority to order [federal officials] to accept custody of [him]." Fisher, 981 F. Supp. at 176.

To counter the force of these principles, Plaintiff seeks to relitigate his argument that the federal court really has jurisdiction over his criminal case because his state prosecution contravenes the Double Jeopardy clause of the Fifth Amendment. During the hearing, he asserted that the State should not have jurisdiction over his criminal case because only the federal court does. The Court has already rejected this argument as a matter of law. Silva, 2020 WL 1502279, at *3-4.

Plaintiff also appears to argue that his present incarceration in the custody of the State is really somehow also pursuant to an action by this Court because he is supposed to be in federal

custody.[13]  The argument fails as a matter of law – this Court's determination, announced on September 16, 2019, and memorialized in a written judgment on September 17, 2019, expressly imposed a sentence of "time served."  Silva, No. 13-cr-43JJM, Text Order Sept. 16, 2019; ECF No. 131.  Such a sentence rendered Plaintiff eligible for immediate release from federal custody.  See e.g., United States v. Alexander, No. 20-1994, 2021 U.S. App. LEXIS 2866, at *4 (6th Cir. Feb. 2, 2021) (request for sentence of time served is a request "for immediate release"); see also Black's Law Dictionary 1637 (11th ed. 2019) ("sentence [of time served] results in the defendant's release from custody"); Nolo's Plain-English Law Dictionary, https://www.law.cornell.edu/wex/time_served (last visited Mar. 22, 2021) ("When a judge sentences a defendant to 'time served,' the sentence is the same as the time the defendant has spent in jail, and the defendant is set free.").  However, it also rendered Plaintiff subject to arrest

---

[13] In arguing that he is really supposed to be in federal custody, Plaintiff alluded to Silva, 21-cv-48SJM, in which Plaintiff has sued the presiding judge assigned to this case (19-cv-568JJM), alleging:

> Plaintiff learned in August 2020, that McConnell, Jr. had retracted Plaintiff's supervised community release on 9/17/19.  Clearly demonstrating a conspiracy with McBurney, III to provide the State with a brief window of opportunity to illegally arrest Plaintiff before closing it.

21-cv-48SJM, ECF No. 1 at 12.  In the same case, Plaintiff filed a moot (because the case had been transferred to the District of New Hampshire) motion to recuse Magistrate Judge Almond in which he asserted his intent to "summons . . . Magistrate Judge Patricia Sullivan to provide testimony pertaining to the true facts of this case."  Silva, 21-cv-48SJM, ECF No. 7 at 1.  In considering whether these allegations and assertions give rise to a duty to recuse, the Court must be mindful of 28 U.S.C. § 455, which "seeks to balance two competing policy considerations: first, that 'courts must not only be, but seem to be, free of bias or prejudice, . . .' and second, the fear that recusal on demand would provide litigants with a veto against unwanted judges[.]"  United States v. Schofield, Cr. No. 18-039 WES, 2021 WL 50133, at *2 (D.R.I. Jan. 4, 2021) (quoting In re Boston's Children First, 244 F.3d 164, 167 (1st Cir. 2001)).  It is well settled that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  Liteky v. United States, 510 U.S. 540, 555 (1994); see Greineder v. Medeiros, Civil Action No. 15-12978-RGS, 2018 WL 10802680, at *19 n.3 (D. Mass. Sept. 7, 2018) (bias must stem from an "extrajudicial source" and not from information learned through judicial proceedings), adopted, 2019 WL 9054719 (D. Mass. May 6, 2019), appeal terminated, No. 19-1581 (1st Cir. Dec. 9, 2019).  Because Plaintiff's allegations and assertions in Silva, 21-cv-48SJM, appear to rest on the Court's judicial decision to impose a sentence of time served, there is no extrajudicial source of information regarding this matter; further, this is a not a disputed fact in that Plaintiff has repeatedly acknowledged that he is incarcerated by the State following arrest on the State's warrant.  Therefore, recusal is not appropriate.  See Shao v. Roberts, Civil Action No. 18-1233 (RC), 2018 U.S. Dist. LEXIS 219621, at *12 (D.D.C. Aug. 8, 2018) (countless courts have held that a judge is not required to recuse where movant alleges judicial conspiracy but offers no facts that would fairly convince a reasonable person to question the court's impartiality).

on the State's warrant. As Plaintiff himself acknowledges, he "was arrested on an alleged illegal warrant issued by politically appointed . . . State Magistrate John F. McBurney III," Silva, 20-cv-12-PJB-AKJ, ECF No. 1 at 15, and was "incarcerated at the Rhode Island Department of Corrections on 9/16/19 for a 'Failure to Appear' Warrant issued by State Magistrate John F. McBurney III," ECF No. 30 at 1. Following his arrest on the State warrant and his incarceration in State custody, he has remained in State custody, subject to the ongoing State prosecution. Therefore, this Court lacks the authority to transfer him into federal custody.

### V. CONCLUSION

Based on the foregoing, I recommend that Plaintiff's motion (ECF No. 30) for an immediate transfer to the Fort Devens, F.C.I. Medical Facility or any other federal facility, be denied. To the extent that the motion seeks an interim injunction ordering RIDOC to provide medical treatment, it remains pending.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 22, 2021