UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERALD J. SILVA, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-568JJM |
| | : | |
| STATE OF RHODE ISLAND, et al., | : | |
|     Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This report and recommendation is the second of two addressing Plaintiff's motion for immediate transfer into federal custody, preferably to the Fort Devens, F.C.I. Medical Facility. ECF No. 30. In the first, Silva v. Rhode Island, C.A. No. 19-568JJM, 2021 WL 1085408 (D.R.I. Mar. 22, 2021) (referred to herein as "the Transfer R+R"),[1] I recommended that Plaintiff's request for an order of transfer into federal custody be denied; however, mindful of the leniency due to Plaintiff as a *pro se* litigant, I made clear that I was also interpreting the motion as seeking an interim injunction ordering the State to provide urgently needed medical assessments and diagnostic testing and, if medically necessary, treatment, for any of Plaintiff's serious medical issues. Id. at *1. After the Transfer R+R issued, that aspect of the motion remained under advisement. Since then, the State has submitted two sworn affidavits (filed under seal) from medical professionals (ECF Nos. 47-48) associated with the Rhode Island Department of Corrections ("RIDOC") regarding Plaintiff's ongoing medical treatment and I have conducted a hearing during which the parties supplemented the factual record. Including the final hearing

---

[1] The Transfer R+R lays out much of the factual background and at least some of the applicable law that is relevant to the matters addressed in this second report and recommendation. Because this report and recommendation is intended as a continuation of the Transfer R+R, that content is incorporated by reference; in the interest of brevity, I have strived not to repeat it all here.

held on April 2, 2021, the Court has conducted a total of four hearings on the motion. Based on the record that has developed during these hearings, as well as based on the parties' submissions, the medical aspect of the motion (as well as Plaintiff's complaint that RIDOC does not adequately meet his legal needs) is now ripe for decision. For the reasons that follow, I recommend that the motion be denied.

I.      FACTS AND ARGUMENTS

Invoking 42 U.S.C. § 1983, Plaintiff, a *pro se* pretrial detainee at Rhode Island's Adult Correctional Institutions ("ACI"), seeks, *inter alia*, injunctive relief from the State of Rhode Island based on his claim of RIDOC's past and ongoing deliberate and/or objectively unreasonable indifference to his need for adequate medical treatment for a serious cardiac condition, as well as for other medical needs.[2] The length of Plaintiff's pretrial detention is pertinent in that it has been ongoing since September 2019 and may well continue until August 2021, when his state criminal case is presently scheduled for trial. Silva, 2021 WL 1085408, at *2, 4.

In the pending motion, Plaintiff alleged that he sought a transfer because ACI officials were ignoring his chronic health issues, he was assigned to a top bunk, forcing him to sleep on the floor, and his glasses are held together with adhesive tape from deodorant packing. ECF No. 30 at 2-3. During the February 5, 2021, hearing, Plaintiff advised the Court that his complaint about his bunk assignment had been resolved. During the February 25, 2021, hearing, Plaintiff advised that he was receiving physical therapy and had just been seen by a physician. Further, the Court's observation has established that Plaintiff's glasses, which are clearly broken, are

---

[2] The Court notes that, in Plaintiff's recently filed "Response to Defendant State of Rhode Island's Answer," ECF No. 49, Plaintiff suggests for the first time that he may be suing the State under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213. Id. at 13. With no such allegation in his Amended Complaint and no facts to support such a claim, the Court has not attempted to consider it.

nevertheless still usable. Beyond what is alleged in the motion, during the hearings, Plaintiff expanded his complaint about inadequate medical treatment with the assertions that he was not receiving proper attention and medication for a cardiac condition; that he had not received a medically necessary nightguard; and that he had not been medically counseled regarding whether and which COVID-19 vaccine to accept in light of his medical conditions.

The State's submissions under oath address these claims.

The affidavit of the RIDOC's Acting Medical Director (Dr. Justin Berk),[3] dated March 24, 2021, avers that since the motion has been pending, Plaintiff saw a physician in February 2021, who performed a complete physical examination, including the procurement of heart diagnostic testing (EKG and chest x-ray), all of which were normal except for mildly elevated blood pressure. ECF No. 46-1 ¶ 2(a). Meanwhile, a referral for echocardiogram and for a non-urgent appointment with a cardiologist is pending, while an order was placed for Holter monitor testing, which is expected to be performed in the next few weeks. Id. ¶ 2(a-b). Also, during the February appointment, a second blood pressure medication (Metoprolol) was prescribed, supplementing the medication regimen (Lisinopril and a low dose of aspirin) already prescribed, and Plaintiff was advised of the benefits and risks of the COVID-19 vaccine and offered the vaccine, but refused. Id. ¶¶ 2(c-d), 3. He is regularly tested for COVID-19 and remains negative. Id. ¶ 3. Under oath in his capacity as a physician licensed in Rhode Island and as RIDOC's Acting Medical Director, Dr. Berk opined that Plaintiff's treatment plan is appropriate and reasonable. Id. ¶ 4.

---

[3] Plaintiff objected to this affidavit because it was signed by the Acting Medical Director and not the treating physician who saw him in February and March 2021. This objection is overruled; Plaintiff's underlying claim is based on his allegation that RIDOC's Medical Director was indifferent to his serious medical needs; therefore, a statement regarding Plaintiff's overall and ongoing treatment is appropriately averred to by the physician (Dr. Berk) now holding that position. Further, except as discussed in the text, Plaintiff did not challenge the factual accuracy of the Acting Medical Director's averments.

In response, during the hearing, Plaintiff advised the Court that he saw the same physician again, on March 26, 2021,[4] and that the encounter was so extensive that he had a page and a half of notes reflecting the medical issues he raised with the physician. Regarding medication, Plaintiff stated[5] that he had not been receiving prescribed Metoprolol. Regarding the vaccine decision, Plaintiff stated that, despite discussion of it at two encounters with the physician, Plaintiff did not receive definitive guidance regarding the impact of each of the three vaccines that have been FDA-approved (not all of which are presently available to ACI prisoners) on a person with his medical characteristics. Based on his own research, he has refused the proffered vaccine and decided to wait for the vaccine that is not yet available.

Because of the potential seriousness of whether Plaintiff has been and will be receiving prescribed medication (Metoprolol), the Court asked the State to follow-up promptly. This was done during the hearing. Counsel for the State accessed RIDOC's online medical records and made an on-the-record representation to the Court that Plaintiff had been given Metoprolol as a "keep-on-person" medication. If it is gone, that is because Plaintiff ran out. A refill is presently available for Plaintiff to pick up in the ACI's dispensary. Plaintiff did not dispute these representations.

The State's other sworn submission was from RIDOC's Administrator of Health Care Services, Ms. Pauline Marcussen, DHA, RHIA, CCHP. ECF No. 46-2. Regarding Plaintiff's complaint about the lack of a nightguard, she avers that RIDOC has implemented an exception for Plaintiff to its policy regarding dental care and nightguards for pretrial detainees. Pursuant to

---

[4] Plaintiff also attacked the Acting Medical Director's affidavit because it ignored this detailed encounter with a physician on March 26, 2021. I disregard the argument because the Acting Medical Director's affidavit was signed and filed pursuant to the Court's order <u>before</u> that appointment occurred.

[5] With the consent of all parties, the Court did not place Plaintiff under oath but accepted this factual statement as evidence.

this exception, Plaintiff was seen by a dentist and provided with a nightguard in March 2021. Id. ¶¶ 2-3. Regarding Plaintiff's broken glasses, she avers that RIDOC has struggled with the lack of an optometrist, a problem that was exacerbated by the exigencies of the pandemic. Id. ¶ 4. More recently, RIDOC has addressed these impediments and Plaintiff is on the list to be seen, id. ¶¶ 4-5, provided that counsel for the State represented at the hearing that, because Plaintiff has glasses that are usable (with tape), others with more serious vision needs will be seen first. In response, Plaintiff complained that he had to go back to the dentist three times to get the nightguard to fit properly and that it is now merely "better than nothing." While Plaintiff believes he may have other dental issues, he has not asked to see the dentist again. Plaintiff made no further statement regarding the glasses.

In addition to the medical matters discussed above, at the end of the final hearing on the motion, Plaintiff raised what had been no more than a passing mention in the motion of his unmet "[l]egal needs."[6] ECF No. 30 at 3. During the hearing, he supplemented the motion with the representation that he had a problem in another case with getting a document timely notarized, that he has limited ability to make copies using a copy machine and that his law library access is inadequate. Plaintiff asserted that these deficiencies have had an adverse impact on this case, in that the discovery he had mailed (improperly) to the Court has been lost and he could not make machine copies and did not make handwritten copies. Regarding his ability to research the law, Plaintiff advised the Court that, based on his research, he has two pages of applicable case cites and that these cases are cited in his many filings. For remedies, Plaintiff

---

[6] This argument was addressed in the Transfer R+R, Silva, 2021 WL 1085408, at *1 n.2. There, in the context of considering whether to order Plaintiff transferred into federal custody, the Court concluded that Plaintiff's assertion that RIDOC's legal facilities are inadequate was seriously underdeveloped in that Plaintiff had not raised any specific denial of access that has actually inflicted injury as required by Lewis v. Casey, 518 U.S. 343, 349 (1996). Silva, 2021 WL 1085408, at *1 n.2. In light of Plaintiff's attempt to cure that deficiency at the hearing on the medical issues, in this report and recommendation, I now address whether the Court should order the relief Plaintiff seeks, assuming he remains in the custody of RIDOC.

asks the Court to order the State to hire a paralegal to assist him with this and all his other cases, as well as to assign a federal prosecutor (preferably from an anti-corruption team based in New York) to bring criminal charges because his lack of access to legal facilities is a deprivation of constitutional dimensions.

## II.     STANDARD OF REVIEW

As set out more fully in the Transfer R+R, "[t]o secure a preliminary injunction, a plaintiff must show: '(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.'" NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020) (quoting Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)).  Like Plaintiff's request for transfer, a preliminary injunction ordering that Plaintiff be provided specific medical care or legal resources while the case is pending is a mandatory injunction, which "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 41 (1st Cir. 2010); Harris v. Wall, 217 F. Supp. 3d 541, 553 (D.R.I. 2016) (same).  In considering whether to issue such a mandatory injunction, "courts should exercise caution . . . and avoid becoming 'enmeshed in the minutiae of prison operations.'" Kealoha v. Espinda, Civil No. 20-00323 JAO-RT, 2020 WL 5602837, at *3 (D. Haw. Sept. 18, 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

## III.    DENIAL OF MEDICAL TREATMENT – LAW, ANALYSIS AND RECOMMENDATIONS

### A.     Applicable Law Regarding Medical Treatment

As a pretrial detainee, Plaintiff's constitutional right to adequate medical care derives from his right under the Due Process Clause of the Fourteenth Amendment to be free of

punishment.  See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005); see Spencer v. City of Bos., Civil Action No. 13-11528-MBB, 2015 WL 6870044, at *7 (D. Mass. Nov. 6, 2015) ("constitutional violations based on denied or inadequate medical care brought by pretrial detainees are analyzed under the substantive component of the Due Process Clause of the Fourteenth Amendment").  Since Kingsley v. Hendrickson, 576 U.S. 389 (2015), it has been unclear whether this right means that a pretrial detainee asserting that he has been denied adequate medical care must show deliberate indifference as required by the Eighth Amendment, or merely that the conduct "purposely or knowingly used against him was objectively unreasonable."  Id. at 397; see Gomes v. U.S. Dep't of Homeland Sec., 460 F. Supp. 3d 132, 145-148 (D.N.H. 2020) (noting Circuit split and observing that, post-Kingsley, First Circuit has applied Eighth Amendment deliberate indifference standard to pretrial detainee medical claims twice but that those decisions do not foreclose change of standard by Kingsley).  Notably, while this Court has applied the objective reasonableness standard to a *civil* detainee's medical claim, Medeiros v. Martin, 458 F. Supp. 3d 122, 128 & 128 n.1 (D.R.I. May 1, 2020), and courts generally apply the same standard for civil detainees as for pretrial criminal detainees, Savino v. Souza, 459 F. Supp. 3d 317, 328 (D. Mass. 2020), post-Kingsley, the overwhelming majority of district courts in the First Circuit have continued to apply the Eighth Amendment standard to criminal detainees' claims of inadequate medical care.  See, e.g., De La Cruz v. Martin, C.A. No. 21-049-JJM-PAS, 2021 WL 1293449, at *2 n.1 (D.R.I. Apr. 7, 2021) (applying Eighth Amendment standard to pretrial detainee claim of inadequate medical care); Daggett v. York Cty., No. 2:18-cv-00303-JAW, 2021 WL 868713, at *33-37 (D. Me. Mar. 8, 2021) (same); Vick

v. Moore, Civil No. 19-cv-267-SJM-AKJ, 2019 WL 7568227, at *5-6 (D.R.I. Oct. 11, 2019) (same), adopted, 2020 WL 161023 (D.R.I. Jan. 13, 2020).[7]

Viewed through the Eighth Amendment lens, a plaintiff alleging inadequate medical care must satisfy a two-prong test. Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (per curiam). First, he must show "as an objective matter, that he has a serious medical need that received inadequate care." Id. (internal quotation marks omitted). "A serious medical need is that which has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal citation marks omitted). The second prong is subjective; it mandates that prison administrators must have exhibited a deliberate indifference to the prisoner's needs. Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014). "Deliberate indifference" requires a showing of "greater culpability than negligence but less than a purpose to do harm" and it may "consist of showing a conscious failure to provide medical services where they would be reasonably appropriate." Coscia v. Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011). "To show such a state of mind, the plaintiff must provide evidence that the defendant had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented the harm." Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (citation and internal quotation marks omitted). But the constitutional entitlement is to adequate medical care, not the "most sophisticated care" available. Kosilek, 774 F.3d at 85. Nor does the Eighth Amendment "impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." Id. at 82; see Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (where "a prisoner has received some

---

[7] One court has noted the ambiguity but declined to decide the question. See Pitts v. Lee, Civil No. 15-cv-365-SM, 2015 U.S. Dist. LEXIS 164984, at *3 n.2 (D.N.H. Nov. 24, 2015), adopted, 2015 U.S. Dist. LEXIS 164985 (D.N.H. Dec. 9, 2015).

medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments") (internal quotation marks omitted).

For a Fourteenth Amendment medical care claim to be sustained based on the more plaintiff-friendly objective reasonableness standard, a plaintiff must also satisfy a two-prong test. Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019).  The first prong "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [Plaintiff's] case."  Id. (internal quotation marks omitted). Second, Plaintiff must show that the "challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances."  James v. Hale, 959 F.3d 307, 318 (7th Cir. 2020).  The objective reasonableness test "is easier for a plaintiff to meet than the subjective deliberate-indifference standard" of an Eighth Amendment analysis.  Pulera v. Sarzant, 966 F.3d 540, 550 (7th Cir. 2020), cert. denied, 209 L. Ed. 2d 187 (U.S. Mar. 1, 2021); accord Medeiros, 458 F. Supp. 3d at 128 n.1.  Nevertheless, as with the stricter Eighth Amendment standard, "more than negligence or even gross negligence is required for a viable § 1983 claim for inadequate medical care."  James, 959 F.3d at 318.

    **B.**    **Analysis and Recommendation Regarding Medical Treatment**

With regard to medical care, the Court need not resolve whether the applicable standard is Eighth-Amendment deliberate indifference or objective reasonableness – the evidence is clear that Plaintiff's medical claim fails to meet the threshold for an interim mandatory injunction even under the more lenient standard.  That is, Plaintiff has not sustained his burden of proving that he has a serious unmet medical need *or* that RIDOC's ongoing approach to his medical issues is objectively unreasonable.  To the contrary, accepting Plaintiff's statements as evidence and

based on the unrebutted averments of Dr. Berk and Ms. Marcussen, I find that, since the motion was filed on December 7, 2020:

- Plaintiff's complaint about his bunk assignment was resolved;
- Plaintiff has received physical therapy;
- Plaintiff's heart concerns have been the focus of a physical examination, an EKG, and a chest x-ray, with more tests planned, and despite normal findings except for high blood pressure, Plaintiff is on the list for an appointment with a cardiologist;
- Two medications have been prescribed for high blood pressure, as well as a low dose of aspirin to reduce the risk of heart attack;
- Plaintiff has been offered a COVID-19 vaccine;
- Plaintiff has twice been given the opportunity to confer with a physician about deciding whether to accept the COVID-19 vaccine;
- Plaintiff has had three dental appointments and has been provided with a nightguard;
- Plaintiff is on the list to see an optometrist to get new glasses; and
- Plaintiff had another very recent encounter with a physician during which he generated lengthy notes.

Plaintiff's only potentially serious unmet medical need (the lack of prescribed Metoprolol) arose from his own failure to pick up the refill of that medication that is waiting for him at RIDOC's dispensary – this certainly does not evidence that RIDOC has delivered objectively unreasonable care. See Newman v. Moses, Case No. 5:16-cv-2-WTH-GRJ, 2017 WL 4836508, at *8 (N.D. Fla. Apr. 20, 2017), adopted sub nom., Newman v. Izuegbo, Case No. 5:16-cv-2-WTH-GRJ, 2017 WL 4817868 (N.D. Fla. Oct. 25, 2017), (applying Eighth Amendment standard, it is "axiomatic that [d]efendants could not be deliberately indifferent for failing to provide proper medications based on Plaintiff's own failure to submit a refill request"). Otherwise, Plaintiff complains that the new nightguard does not fit as well as it could and is unhappy that the physician he spoke to twice could not provide data regarding vaccine reactions to each version among people with his characteristics.[8] However, such dissatisfaction does not

---

[8] Plaintiff may not have focused on the reality that the vaccines in question have only been widely administered for a relatively short period so that the robust and detailed data he wants may not yet exist.

amount to objectively unreasonable medical treatment. See Pulera, 966 F.3d at 552 ("reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with . . . the scope of the requested treatment") (internal quotation marks omitted).

At bottom, Dr. Berk has credibly opined that Plaintiff's treatment plan is appropriate and reasonable and Plaintiff has presently no evidence that persuasively undermines that averment. I recommend that Plaintiff's motion be denied to the extent that it can be interpreted as seeking a mandatory interim injunction requiring the State to provide specific medical treatment.

### IV. DENIAL OF ACCESS TO LEGAL RESOURCES – LAW, ANALYSIS AND RECOMMENDATIONS

#### A. Applicable Law Regarding Right of Pretrial Detainee to Access Legal Library and Related Resources

State pretrial detainees have a Sixth and Fourteenth Amendment right of meaningful access to the courts. Yahtues v. Dionne, Case No. 16-cv-174-SM, 2020 WL 1492877, at *7 (D.N.H. Mar. 27, 2020). That right, however, is "narrow in scope." Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000). It does not extend to enabling Plaintiff to litigate with "maximum effectiveness once in court." Id.; see Johnson v. Poulin, Civil No. 07-cv-161-PB, 2008 WL 1848658, at *5 (D.N.H. Apr. 24, 2008) ("Constitution requires only that prisoners be able to present their grievances to the courts, not that they be able to conduct generalized research") (internal quotation marks omitted). Rather, to assert a viable claim for denial of access to the courts, a prisoner must show that the failure to provide the specified legal resources resulted in actual injury – that is, that the purported denial actually "frustrated or . . . impeded" a nonfrivolous claim. Boivin, 225 F.3d at 43 n.5 (internal quotation marks omitted). For example, a denial of copies is not, in and of itself, unconstitutional. Unitt v. Bennett, Civil Action No. 17-11468-RGS, 2018 WL 1732156, at *7 (D. Mass. Apr. 10, 2018). Similarly, jail personnel are not

required to be paralegals with legal training sufficient for the giving of legal advice; to amount to a constitutional deprivation, a prisoner must be able to show that the deficiency actually interfered with his access to courts. Counts v. Newhart, 951 F. Supp. 579, 588-89 (E.D. Va. 1996), aff'd, 116 F.3d 1473 (4th Cir. 1997).

### B. Analysis and Recommendation Regarding Access to Legal Resources

Plaintiff has failed to present any concrete evidence that RIDOC's failure to provide access to legal resources has caused him any difficulty in litigating his many cases, including this one. His only colorable[9] example of prejudice was his claim that he had trouble getting something timely notarized in another case; however, he presented nothing to establish that this difficulty in getting a document notarized actually "frustrated or . . . impeded" him in presenting a non-frivolous claim. Boivin, 225 F.3d at 43 n.5 (internal quotation marks omitted). Indeed, in this case, Plaintiff has been a persistent and successful litigant, including presenting the Court with numerous citations to cases to support his claims and argument. Mindful of the high bar that the First Circuit has set for a claim of constitutionally deficient access to legal resources, id. at 42, I find that Plaintiff has failed to sustain his burden of demonstrating that any deficiency in the legal resources that RIDOC has made available actually interfered with his access to courts. Therefore, to the extent that the motion may be interpreted as seeking an interim mandatory injunction requiring RIDOC to supply Plaintiff with a paralegal,[10] greater access to a copy machine or law library, or any other such resources, I recommend that it be denied.

---

[9] Plaintiff also complained that he did not keep a copy of the discovery that he lost because he improperly (in defiance of the Court's Local Rules) mailed it to the Clerk's Office. That Plaintiff will have to reissue this lost discovery is the result of his own conduct, not RIDOC's lack of sufficient copy machines; further, Plaintiff quickly exposed the problem so that it has not had any adverse impact on his ability to litigate this case.

[10] Plaintiff also asked the Court to assign him a personal federal prosecutor based in New York to bring criminal charges as directed by Plaintiff. I recommend that the Court deny the motion to the extent that it seeks such relief. See Silva v. Smith, No. 20-cv-12-PJB-AKJ, 2021 WL 1193408, at *4 (D.R.I. Mar. 30, 2021) ("A private citizen, however, may not initiate a federal criminal prosecution.").

## V.     CONCLUSION

Based on the foregoing, I recommend that Plaintiff's motion (ECF No. 30) for an immediate transfer to the Fort Devens, F.C.I. Medical Facility or any other federal facility, be denied in its entirety, including to the extent that the motion may be interpreted as seeking an interim injunction ordering RIDOC to provide additional medical treatment or additional access to legal resources.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 9, 2021